RE:   My clients and claimants-plaintiffs:   Gervais J. Loubier and
                                             Claudette Loubier

      Defendant & State Farm's Insured:   Christian Mateo-Cruz
      State Farm's File #:                07 307 2250
      Allstate's Insureds:                Gervais J. Loubier and
                                          Claudette Loubier

      Allstate's File #:                  0 25 455436 03/05
      Date of Injury:                     2-13-06

Dear Ms. Coyle :

In follow up to our phone conversations, your E-mail of August 8, 2006
and my 24 page, hand delivered letter to Mr. Sean Clifford, my clients'
Allstate agent, of May 4, 2006 in reference, please be reminded that I
represent Gervais J. Loubier and his wife, Claudette Loubier. You,
Allstate, and any of its employees, agents, representatives or attorneys,
should deal with me in any matter concerning reference.

Per your said E-mail and our last phone conversation, in addition to the
information/ documents provided by my said letter to Mr. Clifford, which
you said you had, enclosed is/are the following information/document
copies pertaining to reference:

    1.  As a direct result of referenced injuries caused by said
tortfeasor, Mr. Loubier underwent cervical disk surgery on Friday, May 5,
2006, by the team of Robert W. Nolan, M.D., an orthopedic surgeon, and
Patrick P. Mastroianni, M.D., a neurological surgeon, and a description
of said surgery taken from the booklet provided him by Dr. Nolan (color
cover and color pages 12 and 13) is attached as Exhibit A hereto.

    2.  A color photo depicting the external aftermath upon Mr. Loubier
of said surgery is attached as Exhibit B hereto.

    3.  Also, Mr. Loubier will require further treatment as described in
the document provided him by Dr. Nolan (i.e. Valley Orthopedic
Specialists Pre-Op Anterior Cervical Disc Fusion Instructions), which is
attached as Exhibit C hereto.

    4.  Further, upon recovery from said cervical disk surgery, which
is expected to be in some three months, — again as a direct result of
referenced injuries caused by the tortfeasor — said team may probably
perform surgery on Mr. Loubier's lower back.

    5.  Patrick P. Mastroianni, M.D.'s Operation Reports and billing in
the amount of $16,733.00 for said cervical disk surgery, which is
attached as Exhibit D hereto.

6. Robert W. Nolan, M.D.'s Operation Reports and billing in the amount of $29,899.40 for said cervical disk surgery, which is attached as Exhibit E hereto.

7 Griffin Anesthesia Associates, P.C.'s billing in the amount of $2,160.00 for said cervical disk surgery, which is attached as Exhibit F hereto.

8. Griffin Hospital's bills for pre-op services on April 28, 2006 in the amount of $976.50 and in the amount of $31,538.95 for said cervical disk surgery, which are attached as Exhibit G and H hereto.

9. Community Physical Therapy Services'/ Advanced Physical Therapy's notes and billing in the amount of $1,575.00 for physical therapy prior to said cervical disk surgery, which is attached as Exhibit I hereto.

To facilitate your review, I am hereby enclosing pertinent medical records (Exhibits J and I hereto) pertaining to Mr. Loubier's prior Worker's Compensation injury.

Please note the the following subsumed in said notes by Mr. Loubier treating physicians:

1. Patrick P. Mastroianni, M.D., a Diplomate of the American Board of Neurological Surgery, who stated in pertinent part on his Note of April 7, 2006 for Mr. Loubier:

RE: GERVAIS LOUBIER

Mr. Loubier is in today after having sustained a motor vehicle accident on February 13, 2006. Mr. Loubier was driving a vehicle that was struck by another vehicle from the rear driver's side. Initially, he was shaken up and within a few hours experienced pain in the neck and low back. The neck pain radiates into his left shoulder and sometimes into his left arm. In addition there is numbness. The low back pain will radiate into the right leg in an approximate L5 distribution, there is sometimes numbness in the left upper leg as well. Mr. Loubier was evaluated by Dr. Brenis, and physical therapy was given. When symptoms remained, an MRI was obtained of both the neck and the low back, and he is seen today for this reason.

PAST MEDICAL HISTORY:

Positive only for one prior injury, in which a scaffolding that

he was working on collapsed, causing injuries to his low back and his neck.   His low back injury involved lumbar disc herniation at L3-4, which was subsequently treated surgically.

. . . .

PHYSICAL EXAMINATION:

31The patient is a middle-aged man with pain in the neck and low back. . . .

NEUROLOGIC EXAMINATION:

He is alert, oriented and appropriate.

Motor testing reveals definite weakness of the deltoid muscle on the left hand side.   There is also weakness of the dorsiflexors of the right foot.

RADIOLOGY:

Cervical MRI shows disc herniation at the C4-5 level on the left hand side with compression of the C5 nerve root. . . .

ASSESSMENT AND PLAN:

This patient has cervical and lumbar radiculopathy secondary to cervical and lumbar spine trauma.   Although this patient has had previous lumbar findings, the motor vehicle accident of February 13, 2006 clearly aggravated the situation and made his symptoms bad enough to prompt repeat scans.   In any case, both of this patient's cervical and lumbar spines have significant findings.   This taken together with a significant degree of symptomatology, would suggest that surgical correction is in order.   I would recommend initially that he undergo anterior cervical discectomy, interbody bone graft fusion and anterior cervical plate fixation at the C4-5 level.   The nature of the procedure as well as the risks and possible complications were fully explained to the patient and he wishes to proceed, we will make arrangements accordingly.

2.  Robert W. Nolan, M.D., a Board Certified General Orthopedic Surgeon with a Subspecialty in Spine Surgery, who stated in his Note of May 1, 2006 for Mr. Loubier:

31

SUBJECTIVE:   Gervais Loubier is here for a preop discussion.   He is          scheduled for anterior cervical discectomy/ fusion at C4-5 relating to an accident February 13'" when he was struck.    His seat belt snapped into his neck.   He had quite a bit of pain.   He subsequently was under the care of Dr. Mastroianni who evaluated him and felt he was in need of decompression at C4-5.    He is scheduled for surgery.    He is here for discussion regarding that.   He is right hand dominant.   Medical history was reviewed.    He does smoke a pack of cigarettes a day.

OBJECTIVE:   Exam shows he has left sided cervical pain with rotation to that side.    There is pain radiating down the left shoulder.    He has difficulty lifting and reaching with that left arm as well.   Cervical MR was reviewed and confirms significant pathology at C4-5 with neuroforaminal encroachment.

ASSESSMENT: C4-5 disc herniation, left sided neck and arm pain

PLAN:   He is scheduled for a decompression stabilization procedure.   I explained to him the nature of the procedure, risks, complications, postop rehab issues. Possibilities of nonunion, failure of the operation, persistence of pain, loss of motion, future surgery and anesthetic related risks were explained to him. He signed a permit. I believe he gave informed consent.    He'll return to the office 2 weeks postop for x-ray.

If you have any questions, please do not hesitate to contact me.

Sincerely,

EDDI Z. ZYKO, ESQUIRE


81.  On January 22, 2007, Claudette J. Loubier and Gervais V. Loubier  below signed

counsel sent a  self-explanatory multi page letter to Allstate, stating in pertinent part:

Ms. Yvonne D. Coyle
Senior Claims Processing Specialist
Farmington MCO
Allstate Insurance Company  (Allstate)
74 Batterson Park Road
Farmington, Connecticut  06032
                              32

FAX: 860-284-2566

RE:   My clients and claimants-plaintiffs:   Gervais J. Loubier and
                                              Claudette Loubier
      Defendant & State Farm's insured:   Christian Mateo-Cruz
      State Farm's File #:                 07 307 2250
      Allstate's insureds:                 Gervais J. Loubier and
                                           Claudette Loubier

      Allstate's File #:                   0 25 455436 03/05
      Date of Injury:                      2-13-06

Dear Ms. Coyle :

In follow up to our phone conversations this morning:

    1.  I learned this past Saturday at a Connecticut Trial Lawyers
Seminar on Uninsured-Underinsured Motorist insurance that Regs.,
Conn. State Agencies § 38a-334-8(b)(1)(C)  (2007) is the controlling
legal authority as to what my client is required to provide Allstate in
reference.

    2.  Regs., Conn. State Agencies § 38a-334-8(b)(1)(C)  (2007)
states in pertinent part:

        (b) Conditions. (1) A policy may contain in substance the
        following conditions: . . . .

        (C) a provision requiring a claimant to benefits under
        medical payments or protection against uninsured and
        underinsured motorists coverage to submit to the insurer
        written proof of claim, and requiring the injured person to
        submit to physical examinations and to furnish medical
        reports and records;

    3.  By my 24 page, hand delivered letter to Mr. Sean Clifford, my
clients' Allstate agent, of May 4, 2006  and my letter to Allstate of
August 21, 2006,  I have provided to   Allstate everything required.
Indeed,  Mr.  Loubier signed an authorization for you to obtain his
records from his treaters,  Robert W.  Nolan, M.D.,  Patrick P.
Mastroianni, M.D.  and Griffin Hospital.

Per said regulation, we have cooperated fully with Allstate.    You and
Allstate should  have known that.    Accordingly,  it appears that your
request for Mr.  Loubier's Workers Compensation Commission records
is done in "bad faith" and serving to needlessly delay payment of  Mr.
Loubier's Allstate policy limits,  which is another act of "bad faith".

JAN. 22. 2009  3:20PM        ALLSTATE INS

You have all you are authorized by law to have and more than enough time to process Mr. Loubier's' claim.   As you can readily see,  Mr. Loubier's cost of treatment  are some $85,000.00 and may rise.

When you take into account the other economic and great non-economic loss Mr. Loubier and his wife have and will suffer from referenced incident,  the tortfeasor's insurance policy limits with State Farm of $50,000.00 are manifestly inadequate.

Therefore, my clients hereby demand immediate payment of their policy limits of $100,000 under the Underinsured Motorists provisions of their referenced policy with Allstate.

If you have any questions, please do not hesitate to contact me.

Sincerely,

EDDI Z. ZYKO, ESQUIRE

82.  On February 3, 2007,  Claudette J. Loubier and Gervais V. Loubier  below signed

counsel sent a  self-explanatory multi page letter to Allstate, stating in pertinent part,

but with the exhibits-attachments omitted:

Ms. Yvonne D. Coyle
Senior Claims Processing Specialist
Farmington MCO
Allstate insurance Company  (Allstate)
74 Batterson Park Road
Farmington, Connecticut  06032
FAX: 860-284-2566

RE:   My clients and claimants-plaintiffs:      Gervais J. Loubier and
                                                                             Claudette Loubier
        Defendant: & State Farm's Insured:     Christian Mateo-Cruz
        State Farm's File #:                              07 307 2250
        Allstate's insureds:                             Gervais J. Loubier and
                                                                             Claudette Loubier
        Allstate's File #:                                 0 25 455436 03/05
        Date of injury:                                     2-13-06

Dear Ms. Coyle :

A further review  as to Mr. Loubier's medical reports and records that must be furnished to Allstate,  pursuant to Regs., Conn. State Agencies § 38a-334-8(b)(1)(C)  (2007),  revealed that I had not sent to Allstate  Mr.

34

Loubier's records/charts from Associated Internal Medicine (Dr. Brenes and Dr. Raad, 8 pages) and Saint Mary's Hospital (10 pages). They are attached hereto with one blank page between them.

Per said regulation, we have cooperated fully with Allstate and it has all it is authorized by law to get. As you can readily see, Mr. Loubier's cost of treatment is some $85,000.00 and may rise. When you take into account the other economic and great non-economic loss Mr. Loubier and his wife have and will suffer from referenced incident, the tortfeasor's insurance policy limits with State Farm of $50,000.00 are manifestly inadequate.

Therefore, my clients hereby demand immediate payment of their policy limits of $100,000 under the Underinsured Motorists provisions of their referenced policy with Allstate. If I do not receive said policy limits on behalf of my client by close of business on March 5, 2007, legal action will be immediately forthcoming against Allstate, including a claim of "bad faith".

If you have any questions, please do not hesitate to contact me.

Sincerely,

EDDI Z. ZYKO, ESQUIRE

83. On March 3, 2007, Claudette J. Loubier and Gervais V. Loubier below signed counsel sent a self-explanatory five page letter to Allstate via fax and certified mail return receipt requested, stating in pertinent part, but with the exhibits-attachments omitted:

Ms. Yvonne D. Coyle
Senior Claims Processing Specialist
Farmington MCO
Allstate Insurance Company (Allstate)
74 Batterson Park Road
Farmington, Connecticut 06032
FAX: 860-284-2566

RE:   My clients and claimants-plaintiffs:   Gervais J. Loubier and
                                              Claudette Loubier
      Defendant & State Farm's Insured:      Christian Mateo-Cruz
      State Farm's File #:                   07 307 2250
      Allstate's insureds:                   Gervais J. Loubier and
                                              Claudette Loubier

35

Allstate's File #:         0 25 455436 03/05
Date of Injury:           2-13-06

Dear Ms. Coyle :

This letter is a follow up to my letter to Allstate of February 3, 2007.
State Farm, the tortfeasor's insurer, has formally tendered the
tortfeasor's policy limits of $50,000 with it to my clients, who are
Allstate's insureds.   Manifesting this is the enclosed three page, self-
explanatory document that is a copy of the executed and hand delivered
releases to State Farms' attorney, Steven J. Barber, Esquire, Howard,
Kohn, Sprague & Fitzgerald, LLP, 237 Buckingham Street, P.O. Box
261798, Hartford, CT 06126-1798.

In light thereof and to provide you the opportunity to review it in
conjunction with all the material previously provided Allstate in reference,
concerning my clients demand for immediate payment of their policy
limits of $100,000 under the Underinsured Motorists provisions of their
referenced policy with Allstate, I hereby extend to 5:00 P.M., March 19,
2007 for Allstate to tender said policy limits in reference to my clients. If
I do not receive said policy limits on behalf of my client by then, legal
action will be immediately forthcoming against Allstate, including a
claim of "bad faith".

If you have any questions, please do not hesitate to contact me.

Sincerely,

EDDI Z. ZYKO, ESQUIRE


84. On April 23, 2007, Claudette J. Loubier and Gervais V. Loubier below signed

counsel sent a self-explanatory five page letter to Allstate via fax and certified mail

return receipt requested, stating in pertinent part, but with exhibits-attachments

omitted:

Ms. Karen Tamburrino
Claims Manager
Connecticut Casualty MCO
Allstate Insurance Company (Allstate)
74 Batterson Park Road
Farmington, Connecticut 06032
FAX: 860-284-2565

36

RE:  1. My clients and claimants-plaintiffs:  Gervais J. Loubier and
                                                       Claudette Loubier
          Tortfeasor & State Farm's Insured:  Christian Mateo-Cruz
          State Farm's File #:                    07 307 2250
          Allstate's insureds:                   Gervais J. Loubier and
                                                       Claudette Loubier
          Allstate's File #:                      0 25 455436 03/05
          Date of Injury:                         2-13-06

        2. Allstate's five page facsimile sent March 26, 2007 by Karen
Tamburrino to me,  subsuming Allstate's one page Receipt and
Release Underinsured Motorist Insurance - SU  in reference for Gervais
Loubier signature and a three page copy of Allstate's Part V,  Uninsured
Motorist Insurance, Underinsured Motorist Insurance  Coverage SS.

        3. My phone conversation with said Karen Tamburrino on April 2,
2007.——

        4. Allstate's one page letter dated April 12, 2007 sent via DHL
Express Waybill Number 63643776140 by said Karen Tamburrino to
me.

Dear  Ms. Tamburrino:

1. In Reference 3,  I:

        A. Concurred with you that,  under the current interpretation of the
law by the Supreme Court Of Connecticut,  Allstate's understanding
was correct that it had to pay but only $50,000 to my clients,  Allstate's
insureds,  to discharge its obligation to them for their underinsured
motorist claim made under policy number 025455436 with regard to
their loss that occurred on  February 13, 2006.

      B. Further stated:

          1.  That there was no contractual right, or one imposed in
the law, for Allstate to require a release from  my clients,  Allstate's
insureds,  for them to get said $50,000 from Allstate — indeed,  they
should have had said sum without such a requirement shortly after the
demand was made by me for them in my hand delivered letter of May 4,
2006 to their Allstate agent,  Mr. Sean Clifford.

          2.  Said Release subsumed in Reference 2 was improperly
over broad;  signing and returning it to you would have,  surreptitiously,
released any and all claims my client's,  Allstate's insured, had against
Allstate as follow:

(a) Allstate's requiring a release in and of itself is "bad faith" that is compounded by Allstate using such requirement as leverage, which is illegal/ in violation of the public policy that prohibits deceptive acts or business practice/ in violation of the common law/ in violation of the established concepts of fairness/ immoral/ oppressive/ unscrupulous, to get itself off the legal hook for this and its other acts of "bad faith" and violation of the law delimited here.

(b) As delimited in my facsimile to Allstate of January 22, 2007, Allstate's request for Mr. Loubier's Workers Compensation Commission records is "bad faith".

(c) The needless delay in payment of my client's, Allstate's insureds, Allstate policy limits is "bad faith".

(d) My clients' Allstate agent's, Mr. Sean Clifford, with whom they had a long term, fiduciary relationship, failure to offer my clients:

(1) Uninsured/ Underinsured Motorist insurance coverage at twice the amount of their bodily injury coverage per C.G.S.A. § 38a-336; and

(2) Underinsured Motorist Conversion coverage in twice the amount of their bodily injury coverage per C.G.S.A. § 38a-336a.

(e) My clients' Allstate agent's, Mr. Sean Clifford, failure to comply with the controlling law in the State of Connecticut as delimited in *Dimeo v. Burns, Brooks & McNeil, Inc.*, 6 Conn. App. 241, 244, 504 A.2d 557, 1986 Conn. App. LEXIS 840 (1986); Certification denied by: *Dimeo v. Burns, Brooks & McNeil, Inc.*, 199 Conn. 805, 508 A.2d 31, 1986 Conn. LEXIS 796 (1986) as follows in pertinent part:

Two of the plaintiff's three requests to charge were essentially as follows. (1) An insurance agent has special knowledge and skill, and has a duty to advise his client about the kinds and extent of the appropriate coverage. The client ordinarily looks to his agent and relies on the agent's expertise. If the defendants held themselves out as professional insurance counselors, they were required to use that skill so as not to sell the plaintiff only $ 20,000 of uninsured motorist coverage. (2) The defendants had the duty to provide the plaintiff with complete and full information about the insurance they were selling him, to use reasonable care to give him this information so that he would understand it, and to inform him fully about the

38

meaning and benefits of all coverages. We conclude that the court fully and properly covered the substance of the issues raised by these requests.

An insurance agent has the duty to exercise reasonable skill, care and diligence to see that his client has proper coverage. *Todd v. Malafronte*, 3 Conn. App. 16, 22, 484 A.2d 463 (1984). "'Where he undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with reasonable care the duty he has assumed . . . .'" (Emphasis in original.) Id.

The court instructed the jury that selling insurance is a specialized field with specialized knowledge and experience, and that an agent has the duties to advise the client about the kind and extent of desired coverage and to choose the appropriate insurance for the client. The court told the jury that the client ordinarily looks to his agent and relies on the agent's expertise in placing his insurance problems in the agent's hands. [*245] The court instructed the jury that, if the agent performs these duties negligently, he is liable therefor, just as other professionals are. The court also instructed that the standard of care is not that of ordinary negligence but the knowledge, skill and diligence of insurance agents in Connecticut in July, 1980, in similar cases. The court further instructed the jury, on the basis of the expert testimony produced in the case through Reynolds and Ellen, that an agent has the duty to explain uninsured motorist coverage, to explain the consequences of not having a sufficient amount of such coverage, to recommend the proper amount, and to attempt to procure that amount and offer it to the client. The court concluded this part of the charge by instructing the jury that the proper amount of coverage in this case would have been $300,000. These instructions were legally correct, adapted to the issues in the case, and clearly and fairly presented the case to the jury. *Patrick v. Burns*, supra.

Also, See *Kevin Kohn et al. v. John M. Glover Agency, Inc.*, Docket Number: CV-00-0339053, Superior Court, Judicial District of Danbury at Danbury, Connecticut, which states in pertinent part at pages 6-7:

... Connecticut law does recognize an agency relationship between insurance agent and insured at the time insurance is contracted and some duties flow from that relationship. At the very least the agent has a duty to put into

39

effect the type and amount of coverage requested. It also does not seem too much to ask that an agent, with his or her expertise and knowledge of the insurance business, review existing and available coverages, at that time.

This is particularly egregious here, because, Mr. Clifford knew, or should have known, that Claudette and Gervais were immigrants from Quebec (she is now an American citizen and he is a legal resident who has asked me to assist him in the process of becoming an American citizen) and had/have limited understanding of English/ reading ability/ years of schooling in a small, farm country, "French" school only/ understanding of insurance.

II.  In response to the foregoing,  you sent me Reference 4,   which states only:

As per our recent conversation, please be advised that the Allstate Insurance Company has agreed to offer $50,000.00 to resolve this matter. Please note that this amount reflects the balance of the policy limits available under the underinsured motorist coverage.   This offer is made under policy number 025455436 and with regard to the loss that occurred on or about 2/13/06.   It is requested that your prepare a release and forward it to me for review at your earliest convenience.

This is another blatant act of "bad faith" in Allstate's handling of my clients' claim and,  particularly so, in view of the said course of dealing with its own insureds with whom Mr. Clifford and Allstate are fiduciaries.

III.  Accordingly,

A.  Final demand is made for payment of said $50,000 for my clients'  underinsured motorist claim made under policy number 025455436 with regard to the loss that occurred on or about 2/13/06. In exchange therefore,  I shall provide Allstate with a document signed by my clients stating:

### RECEIPT

I/ We hereby acknowledge receipt of $50,000 from Allstate Insurance Company and that under the current interpretation of the law by the Supreme Court Of Connecticut,  Allstate's understanding,  is correct that Allstate had to pay but only $50,000 to us,  Allstate's insureds,  to discharge Allstate's obligation to us  for our underinsured motorist claim made under policy number 025455436 with regard to our loss that

40

occurred on or about February 13, 2006.   This document is not a release of Allstate's handling of said claim and Allstate's as well as our Allstate agent's, Mr. Sean Clifford, failure to:

1. Use their special knowledge and skill to advise us about the kinds and extent of the appropriate coverage that we should have;  and

2. Provide us with complete and full information about the insurance they were selling us;  and

3. Use reasonable care to give us this information so that we would understand it;  and

4. Inform us fully about the meaning and benefits of all coverages.


GERVAIS J. LOUBIER          DATE: _____


CLAUDETTE LOUBIER          DATE: _____


STATE OF CONNECTICUT
                              }          SS: WATERBURY
COUNTY OF NEW HAVEN

On this _____ day of April, 2007, before me appeared said GERVAIS J. LOUBIER and  CLAUDETTE LOUBIER,  to me personally known,  and who acknowledged the execution of the foregoing instrument as his/her free act and deed for the consideration cited therein.

EDDI Z. ZYKO, ESQUIRE
COMMISSIONER OF THE  SUPERIOR COURT
     FOR THE STATE OF CONNECTICUT
120 FENN ROAD
MIDDLEBURY, CT 06763-2515
CT. JURIS NO. 71655
FEDERAL BAR NO. CT-14172
PHONE:     203-758-8119
FAX:          203-598-7994
E-MAIL:     eddi_z_zyko@snet.net


I propose that I exchange the original of said executed Receipt for
41

Allstate's check for $50,000 at your office this coming Wednesday, April 25, 2007 at 1:30 P.M.

Please note that Claudette was recently diagnosed with late Stage Three/ early Stage Four cancer and: is out of work as a result thereof with no income of her own;  homebound; undergoing treatment therefore and  soon to undergo an experimental treatment course.
This matter is negatively impacting her prognosis because of the added, totally unnecessary, emotional drain upon her and, therefore, time is of the essence.

If Allstate does not deliver to me on behalf of my clients, Allstate's insureds, its check for $50,000 at your office this coming Wednesday, April 25, 2007 at 1:30 P.M., or such other mutually acceptable time/ place before 5:00 P.M., Friday, April 27, 2007, legal action, demanding compensatory damages, punitive damages, attorney fees and costs, will be commenced forthwith.

B. Also, as a separate matter, please be advised that Claudette and Gervais are amenable for settling all other said harms that Allstate has visited upon them for another sum.  Allstate must advise me at or before said proposed meeting at your office this coming Wednesday, April 25, 2007 at 1:30 P.M., or such other mutually acceptable time before 5:00 P.M., Friday, April 27, 2007, that it will enter into good faith negotiation to that end or needs an additional two weeks for it to make a good faith review thereof and reply thereto.  If such negotiations lead to an amicable settlement of all other said harms within 30 days of this letter,  Claudette and Gervais will provide Allstate with a General Release thereof in exchange for the agreed upon settlement sum.   If Allstate does not do so on this separate matter, legal action thereinupon, demanding compensatory damages, punitive damages, attorney fees and costs, will be commenced forthwith without further notice.

If you have any questions, please do not hesitate to contact me.

Sincerely,

EDDI Z. ZYKO, ESQUIRE

85. On September 4, 2007, Claudette J. Loubier and Gervais V. Loubier below signed counsel sent a self-explanatory two page letter to Allstate via fax, stating in pertinent part, but with exhibits-attachments omitted:

42

Ms. Tracy Roy
Claims Manager
Connecticut Casualty MCO
Allstate insurance Company  (Allstate)
74 Batterson Park Road
Farmington, Connecticut  06032
FAX: 860-284-2565

RE:   1. My clients and claimants-plaintiffs:  Gervals J. Loubier and
                                                        Claudette Loubier
            Tortfeasor & State Farm's Insured:  Christian Mateo-Cruz
            State Farm's File #:                     07 307 2250
            Allstate's insureds:                     Gervais J. Loubier and
                                                        Claudette Loubier
            Allstate's File #:                        0 25 455436 03/05
            Date of injury:                          2-13-06

        2. Allstate's five page facsimile sent March 26, 2007 by Ms. Karen
Tamburrino to me,  subsuming Allstate's one page Receipt and Release
Underinsured Motorist Insurance - SU  in reference for Gervais Loubier
signature and a three page copy of Allstate's Part V,  Uninsured Motorist
Insurance, Underinsured Motorist Insurance  Coverage SS.

        3.  My phone conversation with said Ms. Karen Tamburrino on
April 2, 2007.

        4.  Allstate's one page letter dated April 12, 2007 sent via DHL
Express Waybill Number 63643776140 by Ms. Karen Tamburrino to me.

        5.  Allstate's one page letter dated May 3, 2007 sent via USPS by
Ms. Tracy Roy to me,  stating in pertinent part:

        INSURED: CLAUDETTE LOUBIER GERVAIS
        DATE OF LOSS: February 13, 2006
        CLAIM NUMBER: 3965353579 GTR

        Dear Attorney Zyko:

        This will acknowledge receipt of your letter of April 23, 2007

        Please be advised that Allstate stands ready and willing to
        resolve this matter for $ 50,000 as full and final upon
        receipt of a satisfactory release of action.

        If you are interested in settlement,  kindly return the
        executed release previously forwarded to you.

                                    43

Dear Ms. Roy:

On behalf of my clients, provide me the following:

1. A certified copy of each policy of Allstate insurance that was ever in effect for my clients.

2. An explanation of where in any of said policies Allstate could require a release from my clients, Allstate's insureds, for them to get said $50,000 from Allstate under the Underinsured provisions thereof.

3. An explanation of where in any controlling law Allstate could require a release from my clients, Allstate's insureds, for them to get said $50,000 from Allstate under the Underinsured provisions of their policies of insurance with Allstate.

4. A certified copy of any document wherein Allstate informed my clients of their statutory rights as follows:

a. Uninsured/ Underinsured Motorist insurance coverage at twice the amount of their bodily injury coverage per C.G.S.A. § 38a-336; and

b. Underinsured Motorist Conversion coverage in twice the amount of their bodily injury coverage per C.G.S.A. § 38a-336a.

5. A certified copy of any document Allstate has in its possession, or control, pertaining to their policies of insurance with Allstate, signed by my clients or anyone on their behalf.

If you have any questions, please do not hesitate to contact me.

Sincerely,

EDDI Z. ZYKO, ESQUIRE

86.    Plaintiffs were the first party beneficiaries of the uninsured motorist coverages provided by contract with Allstate.

87.    The policy provided for uninsured/underinsured motorist coverages which Allstate have unreasonably refused to pay and/or have unreasonably delayed paying, in breach of the contract of insurance.

44

88.   As a result of Allstate's failure and refusal to perform as required under the contract between the parties, Plaintiffs have suffered direct and consequential damages.

89.   As a further result of Allstate's failure and refusal to make payments required under said policy, Plaintiffs have been required to employ attorneys and incur fees and expenses in bringing and litigating this action.

90.   Allstate should have reasonably foreseen or anticipated that, as a consequence of its failure or refusal to perform under the contract of insurance, Plaintiffs would suffer monetary hardship and damage, as well as extra-contractual damages, and Defendants were expressly informed of this fact repeatedly during the pendency of Plaintiffs' claims.

91.   Allstate knew or reasonably should have known of the provisions of said policy of insurance and its obligations to make payments for the losses and damages claimed by Plaintiffs, as contemplated and recognized under applicable Connecticut law, but Allstate consistently failed and refused to tender the undisputed amounts owed to Plaintiffs.

92.   As a result of Allstate's breach of contract, Plaintiffs are entitled to recover actual damages in the amount of unpaid insurance benefits owed for the covered losses sustained by Plaintiffs, and consequential compensatory damages from Allstate, including attorney fees and costs, in an amount to be determined at trial.

45

### COUNT II: ALLSTATE'S, CLIFFORD'S AND MCKINSEY'S VIOLATION OF THE COVENANTS OF GOOD FAITH AND FAIR DEALING IN CLAIM HANDLING (BAD FAITH)

93.   Plaintiffs adopt and incorporate by reference the preceding paragraphs as set forth in full.

94.   Under the law of Connecticut, Allstate owed and continues to owe a duty of good faith  and fair dealing in the administration and performance of its insurance contracts in Connecticut.

95.   Because of the unique character of the relationship between an insurance company and an insured, Allstate's obligations of good faith and fair dealing encompass all of the qualities inherent  in the responsibilities of a fiduciary.

96.   Allstate and its employees know that the relationship of Allstate to its insureds is inherently  unbalanced and that Allstate's great financial wealth and experience places Allstate in a superior  bargaining position to those it insures, including Plaintiffs.

97.   By years of advertising and self-promotion, Allstate holds itself out as a fiduciary to its  insureds with slogans or promises that "You're in Good Hands" or describing itself as "The Good  Hands People," which advertising and self-promotion programs are intentionally designed to  engender its insureds' trust and confidence in Allstate's administration as trustee of the common  fund of premiums paid to Allstate by insureds to pay their common losses.

98.   In this case, Allstate owed Plaintiffs certain non-delegable duties with respect to

46

the prompt investigation, evaluation and payment of Plaintiffs' first party claims, including, but not limited to, the following well-established duties of good faith and fair dealing:

    a.  To adopt and implement reasonable standards and procedures for the prompt, fair, honest and complete investigation and evaluation of claims which promote and encourage Allstate adjusters to give equal consideration to the interests of Allstate's insureds;

    b.  To actually conduct adequate, reasonable, prompt, fair, honest and complete investigations and evaluations of Plaintiffs' claims, giving Plaintiffs' interests equal consideration in such investigations and evaluations;

    c.  To do nothing to deprive Plaintiffs of the full benefit of the coverages paid for by their premiums and expressly promised under the policy;

    d.  To attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims in which liability had become reasonably clear;

    e.  Not to force Plaintiffs to go through needless appraisal, production of documents, litigation or other adversarial hoops to vindicate their rights under the policy;

    f.  Not to lowball claims or delay claims hoping that Plaintiffs might settle for less or abandon their claims entirely;

    g.  Not to deceive Plaintiffs about the benefits to which they are entitled under the policy by misrepresentations or failures to affirmatively inform Plaintiffs about material facts reasonably necessary to prevent statements made about policy benefits or the claim process from being misleading;

    h.  Not to engage in any deceptive, unfair or fraudulent act or practice;

    i.  Not to compel insureds, as a general business practice, to institute litigation to recover amounts due under the policy by offering substantially less than the

amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered.

 j. Denying a claim without a basis in law;

 k. Misrepresenting pertinent facts, policy provisions or the law;

 l. Failing to respond timely to claims;

 m. Failing to conduct a reasonable investigation, both as to the factual basis of the claim and for determination of coverage of the claim, once the insurance company has been notified of a claim;

 n. Delaying other investigation;

 o. Failing to disclose, or concealing, available insurance coverage and/or policy limits;

 p. Failing or delaying payment of undisputed claims to leverage the withdrawal or compromise of disputed claims;

 q. Compelling insureds to file litigation to recover benefits by offering substantially less than the amount reasonably due;

 r. Failing to attempt to resolve or settle claims, where liability is reasonably clear, in a prompt, fair and equitable manner;

 s. Attempting to settle a claim for less than the amount a reasonable person would have believed himself or herself entitled to based on information provided by the company;

 t. Requiring multiple and/or duplicative proofs of loss;

 u. Favoring the interests of the insurance company over those of the insured;

 v. Incompetently or dishonestly evaluating a claim or making misrepresentations to its insureds, Claudette J. Loubier and Gervais V. Loubier;

 w. for Allstate to require a release from plaintiffs, Allstate's insureds, for

48

them to get said $50,000 from Allstate — indeed, they should have had said sum without such a requirement shortly after the demand was made by plaintiffs in their counsel's hand delivered letter of May 4, 2006 to their Allstate agent, Mr. Sean Clifford.

    x.  requiring a Release  that was improperly over broad;  signing and returning it to Allstate would have,  surreptitiously,  released any and all claims plaintiffs, Allstate's insured, had against Allstate as follow:

      (1)  Allstate's  requiring a release in and of itself  is "bad faith" that is compounded by Allstate using such requirement as leverage,  which is illegal/ in violation of the public policy that prohibits deceptive acts or business practice/ in violation of the common law/ in violation of the established concepts of fairness/ immoral/ oppressive/ unscrupulous,  to get itself off the legal hook for this and its other acts of "bad faith" and violation of the law delimited here.

      (2)  As delimited in plaintiffs' counsel facsimile to Allstate of  January 22, 2007,   Allstate's request for Mr.  Loubier's  Workers Compensation Commission records  is "bad faith".

      (3)  The needless delay in payment of the plaintiffs',  Allstate's insureds, Allstate policy limits is "bad faith".

      (4)  Plaintiffs' Allstate agent's,  Mr. Sean Clifford,  with whom they had a long term, fiduciary relationship,  failure to offer them:

        (a)  Uninsured/ Underinsured Motorist insurance coverage at twice the amount of their bodily injury coverage per C.G.S.A. § 38a-336;  and

        (b)  Underinsured Motorist Conversion coverage in twice the amount of  their bodily injury coverage per C.G.S.A. § 38a-336a.

        (c)  Plaintiffs' Allstate agent's,  Mr. Sean Clifford,  failure to  comply with the controlling law in the State of Connecticut as delimited in *Dimeo v. Burns, Brooks & McNeil, Inc.*, 6 Conn. App. 241, 244, 504 A.2d 557, 1986 Conn. App. LEXIS

49

840 (1986); Certification denied by: *Dimeo v. Burns, Brooks & McNeil, Inc.*, 199 Conn. 805, 508 A.2d 31, 1986 Conn. LEXIS 796 (1986) as follows in pertinent part:

Two of the plaintiff's three requests to charge were essentially as follows. (1) An insurance agent has special knowledge and skill, and has a duty to advise his client about the kinds and extent of the appropriate coverage. The client ordinarily looks to his agent and relies on the agent's expertise. If the defendants held themselves out as professional insurance counselors, they were required to use that skill so as not to sell the plaintiff only $ 20,000 of uninsured motorist coverage. (2) The defendants had the duty to provide the plaintiff with complete and full information about the insurance they were selling him, to use reasonable care to give him this information so that he would understand it, and to inform him fully about the meaning and benefits of all coverages. We conclude that the court fully and properly covered the substance of the issues raised by these requests.

An insurance agent has the duty to exercise reasonable skill, care and diligence to see that his client has proper coverage. *Todd v. Malafronte*, 3 Conn. App. 16, 22, 484 A.2d 463 (1984). "'Where he undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with reasonable care the duty he has assumed . . . .'" (Emphasis in original.) Id.

The court instructed the jury that selling insurance is a specialized field with specialized knowledge and experience, and that an agent has the duties to advise the client about the kind and extent of desired coverage and to choose the appropriate insurance for the client. The court told the jury that the client ordinarily looks to his agent and relies on the agent's expertise in placing his insurance problems in the agent's hands. [*245] The court instructed the jury that, if the agent performs these duties negligently, he is liable therefor, just as other professionals are. The court also instructed that the standard of care is not that of ordinary negligence but the knowledge, skill and diligence of insurance agents in Connecticut in July, 1980, in similar cases. The court further instructed the jury, on the basis of the expert testimony produced in the case through Reynolds and Ellen, that an agent has the duty to explain uninsured motorist coverage, to explain the consequences

50

of not having a sufficient amount of such coverage, to
recommend the proper amount, and to attempt to procure
that amount and offer it to the client. The court concluded
this part of the charge by instructing the jury that the proper
amount of coverage in this case would have been
$300,000. These instructions were legally correct, adapted
to the issues in the case, and clearly and fairly presented
the case to the jury. *Patrick v. Burns*, supra.

Also, See *Kevin Kohn et al. v. John M. Glover Agency, Inc.*, Docket
Number: CV-00-0339053, Superior Court, Judicial District of Danbury at
Danbury, Connecticut, which states in pertinent part at pages 6-7:

> ... Connecticut law does recognize an agency relationship
> between insurance agent and insured at the time
> insurance is contracted and some duties flow from that
> relationship. At the very least the agent has a duty to put into
> effect the type and amount of coverage requested. It also
> does not seem too much to ask that an agent, with his or
> her expertise and knowledge of the insurance business,
> review existing and available coverages, at that time.

This is particularly egregious here, because, Mr. Clifford knew, or
should have known, that Claudette and Gervais were immigrants from
Quebec (she had become an American citizen and he is a legal
resident who has asked his undersigned counsel to assist him in the
process of becoming an American citizen) and had/have limited
understanding of English/ reading ability/ years of schooling in a small,
farm country, "French" school only/ understanding of insurance.

99.  At all times alleged herein, McKinsey, Clifford, and his supervisors, knew that

Allstate owed these duties of good faith to plaintiffs.


100.  Allstate, through its agents and employees, including Clifford refused to fairly

and promptly effectuate payment of plaintiffs' valid claims for losses and damages

covered by the policy, for which Allstate's liability had become reasonably clear.


101.  Allstate's conduct toward plaintiffs was frivolous, unfounded, and motivated by

Allstate's desire and plan to place its own interests ahead of those of its insureds.

102. McKinsey, Clifford and others knowingly and intentionally provided substantial aid, encouragement and assistance to Allstate to wrongfully deprive plaintiffs of the benefits of the policy, which actions they knew or should have known were in violation of the duties of good faith and fair dealing owed to Plaintiffs.

103. As a direct and proximate result of the violations of the covenants of good faith and fair dealing occasioned by defendants, plaintiffs suffered damages in amounts to be proved at trial.

104. The wrongful acts of Allstate, Clifford, McKinsey, and others in violating the covenants of good faith and fair dealing were knowing, willful, intentional, malicious or reckless, and as such constitute bad faith, and entitle plaintiffs to an award of compensatory and punitive damages in amounts sufficient to compensate plaintiffs and punish Allstate and deter similar conduct in the future.

105. Plaintiffs have had to obtain the services of an attorney to pursue this matter and, as such, plaintiffs are entitled to an award of attorney fees and reasonable costs associated therewith.

## COUNT III: VIOLATION OF THE CONNECTICUT INSURANCE CODE CONN. GEN. STAT. § 38a-816, ET SEQ. BY ALLSTATE, CLIFFORD AND MCKINSEY

106. Plaintiffs re-allege the preceding paragraphs of the Complaint as though fully recited herein.

107. Allstate, CLifford and McKinsey, in committing the acts alleged herein, failed to perform the statutory duties imposed upon them by the Connecticut Insurance Code,

and more particularly, those enumerated in Conn. Gen. Stat. § 38a-816, et seq, and Allstate, CLifford and McKinsey, have knowingly engaged in acts and practices prohibited by said statutory provisions.

108.   Plaintiffs are members of the general public for whose benefit the aforementioned statute was enacted, and as such, are entitled to relief by private cause of action, pursuant to Conn. Gen. Stat. § 38a-816 (2008).

109.   The actions of Allstate, CLifford and McKinsey, and other employees and agents described herein were performed with such general and deliberate frequency as to constitute a general business practice. Indeed, within the State of Connecticut said actions were numerous as aforesaid.

110.   As a direct and proximate result of Defendants' actions, including their refusal to in good faith promptly pay Plaintiffs' claims in full, Plaintiffs have suffered monetary and other unliquidated compensable damages and will continue to suffer said damages in the future in an amount not presently determinable, but to be proven at the time of trial.

111.   Plaintiffs have had to obtain the services of attorneys to pursue this matter and, as such, pursuant to Conn. Gen. Stat. § 38a-816 (2008) plaintiffs are entitled to an award of attorney fees and reasonable costs associated therewith.

## COUNT IV. NEGLIGENCE BY ALLSTATE AND CLIFFORD

112.   Plaintiffs re-allege the preceding paragraphs of the Complaint as though fully

recited herein.

113. Allstate and Clifford had a duty to offer Under Insured Motorist Conversion Coverage to plaintiff and/ or ensure they knowingly rejected it after being fully and fairly informed thereupon, which they failed to do.

114.   These actions and omissions, having proximately caused the plaintiffs immediate irreparable harm, present and future economic and non-economic damage, including, but not limited to, consequential damages, damages for emotional distress, actual harm to reputation, and prejudice, entitle them to rescind, or reform, the contract and restitution and/ or an award of actual and punitive damages, including, but not limited to, consequential damages, damages for emotional distress, actual harm to reputation, under the common law as is delimited in the Prayer for Relief to this complaint.

## COUNT V: FRAUD BY ALLSTATE, CLIFFORD AND MCKINSEY

115. Plaintiffs re-allege the preceding paragraphs of the Complaint as though fully recited herein.

116.  In furtherance of the foregoing actions and omissions of Allstate, CLifford and McKinsey, a number of affirmative fraudulent representations were made by them, including but not limited to the following expressly and impliedly representing to the plaintiffs on many occasions that they would protect their interests in said insurance if they entrusted them with it – "You (its policy holders) are in Good Hands™ with Allstate." –, which they did.  These representations were false when made in that the defendants had no intention of honoring their promises to the plaintiffs.

54

117. Allstate, CLifford and McKinsey made the foregoing representations with knowledge of their falsity, with reckless disregard for their truth or falsity, and without any present intention of honoring the commitments which those representations implied.

118. Allstate, CLifford and McKinsey made their representations willfully and maliciously with the intent that the representations be relied upon by the plaintiffs so as to induce them to part with property and to surrender legal rights to the defendants to their detriment.

119. The plaintiffs justifiably relied upon these false representations. Until they decided to bring this lawsuit, the plaintiffs felt secure in their belief, as supported by the defendant's continuing express assurances, that they retained their interest at heart.

120. These actions and omissions, having proximately caused the plaintiffs immediate irreparable harm, present and future economic and non-economic damage, including, but not limited to, consequential damages, damages for emotional distress, actual harm to reputation, and prejudice, entitle them to rescind, or reform, the contract and restitution and/ or an award of actual and punitive damages, including, but not limited to, consequential damages, damages for emotional distress, actual harm to reputation, under the common law as is delimited in the Prayer for Relief to this complaint.

## COUNT VI:  INTERFERENCE WITH CONTRACTUAL AND BENEFICIAL RELATIONSHIPS BY MCKINSEY

121. Plaintiffs re-allege the preceding paragraphs of the Complaint as though fully

recited herein.

122. The actions of McKinsey, as complained of in this complaint, amount to the intentional interference with the aforesaid business or contractual relationships of the plaintiffs and, as a result, they have suffered an actual loss as aforesaid.

123. These actions and omissions, having proximately caused the plaintiffs immediate—irreparable—harm, present and future economic and non-economic damage, including, but not limited to, consequential damages, damages for emotional distress, actual harm to reputation, and prejudice, entitle them to rescind, or reform, the contract and restitution and/ or an award of actual and punitive damages, including, but not limited to, consequential damages, damages for emotional distress, actual harm to reputation, under the common law as is delimited in the Prayer for Relief to this complaint.

## COUNT VII: BREACH OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT BY ALLSTATE, CLIFFORD AND MCKINSEY

124. Plaintiffs re-allege the preceding paragraphs of the Complaint as though fully recited herein.

125. The wrongful and unreasonable acts of Allstate, CLifford and McKinsey set forth above constitute a violation of C.G.S.A. § 42-110b. by them in that said actions/ omissions by them, were:

a. In violation of the public policy that prohibits deceptive acts or business practice as aforesaid;

b. In violation of the aforesaid statutes, regulation and common law, to wit:

56

c.  In violation of the established concepts of fairness;

d.  Immoral;

e.  Oppressive;

f.  Unscrupulous.

125.  These actions and omissions, having proximately caused the plaintiffs immediate irreparable harm, present and future economic and non-economic damage, including, but not limited to, consequential damages, damages for emotional distress, actual harm to reputation, and prejudice, entitle them to rescind, or reform, the contract and restitution and/ or an award of actual and punitive damages, including, but not limited to, consequential damages, damages for emotional distress, actual harm to reputation, as well as pre- and post-judgment interest, plaintiffs' costs of suit and attorneys fees, under C.G.S.A. Section 42-110b. as is delimited in the Prayer for Relief to this complaint.

126.  As a result of Allstate, CLifford and McKinsey unfair trade practices, plaintiff sustained Ascertainable damages.

## COUNT VIII:  RICO

127.  Plaintiffs re-allege the preceding paragraphs of the Complaint as though fully recited herein.

128.  Each plaintiffs is a "person" under 18 U.S.C.  §§ 1961(3) and 1964(c).

129. Each defendant is a "person" under 18 U.S.C.  §§ 1961(3), 1962(a), and 1962(d).

57

130. Allstate and McKinsey constitute "enterprises" within the meaning of 18 U.S.C.

§§ 1961(4) and 1962(a), which were engaged in activities affecting interstate

commerce at all times relevant to this Complaint.

131. Defendants conspired among themselves within the meaning of 18 U.S.C. §

1962(d) to violate 18 U.S.C. § 1962(a), that is, defendants conspired among

themselves that income would be received, directly or indirectly, from a pattern of

activity unlawful under 18 U.S.C. § 1961(1)(A) in which defendants participated as

principals within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(a), to wit:

multiple, repeated, and continuous violations of Conn. Gen. Stat. § 53a-119(1)-(3)

(2008), which states:

> A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:
>
> (1) Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody.
>
> (2) Obtaining property by false pretenses. A person obtains property by false pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person.
>
> (3) Obtaining property by false promise. A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or does not believe that the third person intends to engage in such conduct. In any prosecution for larceny based upon a false promise, the defendant's intention or belief that the promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed.

132. As a result, each of the plaintiffs have suffered substantial injury to their property

within the meaning of 18 U.S.C. § 1964(c), as aforesaid.

WHEREFORE,   plaintiffs, respectfully, requests that this Honorable Court:

1.  Award to plaintiffs the actual damages suffered by them as proved at trial.

2.  Award to plaintiffs punitive damages, costs of the suit and attorney fees.

3. Award to plaintiffs prejudgment and post-judgment interest as may be applicable.

4. Grant such other and further relief as this Court deems just, proper, or equitable under the circumstances.

THE PLAINTIFFS,

BY *Eddi J. Zyko*

EDDI Z. ZYKO, ESQUIRE
120 FENN ROAD
MIDDLEBURY, CT 06762
CT. JURIS NO: 071655
FEDERAL BAR NO. CT-14172
TEL NO:     203-758-8119
FAX NO:    203-598-7994
E-MAIL:    eddi_z_zyko@snet.net

A TRUE COPY
ATTEST

Gerald Raimo, State Marshal

59

RETURN DATE:  FEBRUARY 24, 2009 : SUPERIOR COURT

GERVAIS V. LOUBIER AND
THE ESTATE OF CLAUDETTE J. LOUBIER : JUDICIAL DISTRICT
    PLAINTIFFS,
: OF WATERBURY
VS.
:
ALLSTATE INSURANCE COMPANY, SEAN : AT WATERBURY
CLIFFORD AND MCKINSEY & COMPANY, INC., :
DEFENDANTS.
: JANUARY 9, 2009


## AMOUNT IN DEMAND


The Amount in Demand Exclusive of Interest and Costs is more than
$15,000.00.


THE PLAINTIFFS,


BY  *Eddi Z. Zyko*
EDDI Z. ZYKO, ESQUIRE
120 FENN ROAD
MIDDLEBURY, CT  06762
CT JURIS NO: 071655
FEDERAL BAR NO. CT-14172
TEL NO:     203-758-8119
FAX NO:    203-598-7994
E-MAIL:    eddi_z_zyko@snet.net


A TRUE COPY
ATTEST

Gerald Raimo, State Marshal

60

reference.   You, Allstate, and any of its employees, agents, representatives or attorneys, should deal with me in any matter concerning reference.

Pertaining to reference:

Commiss,

Ct Insuran Commiss
Thomas R. Sullivan, 153 Market
Street, Halfal, Ct 06103

2 copies

$^{sr}$2.5.01



396353579 *Claims*

*UTR*

## CT Corporation

**Service of Process Transmittal**
01/15/2009
CT Log Number 514316256

*Corporate Litigation*

*JAN 19 2009*

*Received*

TO:     Michele Mayes, General Counsel
        Allstate Insurance Company
        2775 Sanders Road, Suite A6
        Northbrook, IL 60062-6127

RE:     **Process Served in Connecticut**

FOR:    ALLSTATE INSURANCE COMPANY (Domestic State: IL)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Gervais V. Loubier and The Estate of Claudette J. Loubier, Pltfs. vs. Allstate Insurance Company, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Demand |
| **COURT/AGENCY:** | Waterbury at Waterbury Superior Court Judicial District, CT Case # None Specified |
| **NATURE OF ACTION:** | Insurance Litigation - Policy benefits claimed for personal injuries received as a result of a vehicle collision on 02/13/06 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Hartford, CT |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 01/15/2009 postmarked on 01/14/2009 |
| **APPEARANCE OR ANSWER DUE:** | 02/24/09 - Summons // on or before the second day after the Return Date - file an appearance form |
| **ATTORNEY(S) / SENDER(S):** | Eddi Z. Zyko 120 Fenn Road Middlebury, CT 06762 203-758-8119 |
| **REMARKS:** | Process served/received by Insurance Commissioner on 01/13/09. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority Overnight , 790151143030 Email Notification, Patti Gariti pgariq@allstate.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Gary Scappini |
| **ADDRESS:** | One Corporate Center Floor 11 Hartford, CT 06103-3220 |
| **TELEPHONE:** | 860-724-9044 |

*Received
Allstate Insurance

JAN 2 1 2008

Connecticut Casualty MCO*

1:00/300 TPC
50,000
SU 09

Page 1 of 1 / MF

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

*Connecticut Casualty*

JAN. 22. 2009  3:17PM    NO.540 P. 34    ALLSTATE INS

## STATE OF CONNECTICUT
### OFFICE OF INSURANCE COMMISSIONER

P.O. BOX 816
HARTFORD, CT 06142-0816

This is to certify that the foregoing is a copy of a process served upon me, a person in the office of the Insurance Commissioner of Connecticut, designated by him, pursuant to the statute in such cases made and provided, as one upon whom, in his absence, service of process may be made, upon an insurance company, corporation or association, with the same force and effect as though made on such commissioner personally.

January 13, 2009          at          2:00   p.m.

*Insurance Commissioner*



## STATE OF CONNECTICUT
### OFFICE OF INSURANCE COMMISSIONER

P.O. BOX 816
HARTFORD, CT 06142-0816

GARY J SCAPINI
ALLSTATE INSURANCE CO
C T CORPORATION SYSTEM          .........................Secretary,
ONE  CORPORATE CTR, FLR 11
HARTFORD CT 06103-3220          ..................

Pursuant to the statute in such cases made and provided, I forward herewith a copy of the process served as set forth in the certificate thereto attached.

Respectfully yours,

*Insurance Commissioner*

STATE OF CONNECTICUT )
                     ) ss: Waterbury                    January 13, 2009
COUNTY OF NEW HAVEN )

Then and there by virtue hereof, and at the special direction of the Plaintiff's Attorney, I made due and legal service upon the within named Defendant: **Sean Clifford, Allstate Insurance Agent**, by leaving with and within the hands of: **Denise Petelle, Manager, Person in Charge of the Office at the Time of Service at: 1015 Meriden Road; Waterbury, Connecticut**; a true and attested copy, with my endorsements thereon, of the within *Writ, Summons, Complaint* and *Amount in Demand*.

And afterward, on the same day, in **Waterbury**, I made due and legal service upon the within named Defendant: **McKinsey & Company**, by depositing at the Post Office, via certified mail, postage paid, return receipt requested, a true and attested copy, with my endorsements thereon, of the within original *Writ, Summons, Complaint* and *Amount in Demand*, and addressed to the within named Defendant as such: **Secretary of the Corporation McKinsey & Company; 55 East 52nd Street, 23rd Floor; New York, NY 10022.**

And afterward, on the same day, in **Hartford**, I made due and legal service upon the within named Defendant: **Allstate Insurance Company c/o CT Insurance Commissioner Thomas R. Sullivan**, by leaving with the office of its Statutory Agent for Service: **Connecticut Insurance Commissioner at: 153 Market Street; Hartford, Connecticut**; two (2) true and attested copies, with my endorsements thereon, of the within *Writ, Summons, Complaint* and *Amount in Demand*.

The within and foregoing is the Original *Writ, Summons, Complaint* and *Amount in Demand*, with my doings endorsed hereon.

FEES:
Services:   $ 90.00
Travel:        67.38

ATTEST:

**GERALD RAIMO**
**STATE MARSHAL**

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $ $2.53 |
| Certified Fee | $2.70 |
| Return Receipt Fee (Endorsement Required) | $2.20 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $7.43 |

PS Form 3800, August 2006          See Reverse for Instructions