UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gervais V. Loubier, in his own capacity and as Executor of the Estate of Claudette J. Loubier, *Plaintiffs*, <br><br> v. <br><br> Allstate Insurance Company, Sean Clifford, Edward Liddy, and McKinsey & Company, *Defendants*. | Civil No. 3:09cv261 (JBA) <br><br><br><br> March 30, 2010 |

RULING AND ORDER ON MOTIONS TO DISMISS AND TO STRIKE

After being injured in a car accident in February 2006, Plaintiffs Gervais and Claudette Loubier[1] sought to collect $50,000 in uninsured/underinsured motorist benefits from their auto insurer, Allstate Insurance Company.  Having not collected this sum, they brought suit in state court against Allstate, their insurance agent Sean Clifford, former Allstate CEO and Chairman Edward Liddy, and the consultancy McKinsey & Company in connection with Allstate's handling of their claim for benefits.  They later sought to name Liddy as a defendant in two additional claims by way of amendment to a complaint they had already amended.  Plaintiffs assert nine causes of action: breach of contract; breach of covenant of good faith and fair dealing; the Connecticut Unfair Insurance Practices Act ("CUIPA"); negligence; fraud; interference with contractual and beneficial relationship; the Connecticut Unfair Trade Practices Act ("CUTPA"); and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Defendants removed the action to Federal Court,

---

[1] Mr. Loubier prosecutes the claims of the deceased Ms. Loubier as executor of her estate.

asserting both federal-question and diversity jurisdiction, and have now moved to dismiss all but the first claim, of breach of contract.  For the reasons that follow, Liddy's, Clifford's, and McKinsey's motions will be granted, and Allstate's motion will be granted in part and denied in part.  In addition, Liddy and Allstate's motion to strike the Second Amended Complaint will be granted.

I.      Factual Background and Allegations

        In March 2000, through Allstate agent Sean Clifford, the Loubiers obtained auto insurance from Allstate, including $100,000 uninsured/underinsured motorist ("UIM") coverage.  The policy was renewed every six months, including on September 5, 2005.  Mr. Loubier was injured in a car accident with Christian Mateo–Cruz on February 13, 2006.  He and his wife then sued Mateo-Cruz in state court in September 2006, and obtained Mateo–Cruz's admission of liability as well as $50,000 in proceeds from State Farm under Mateo–Cruz's auto insurance.  In the meantime Plaintiffs requested from Allstate, their own auto insurer, the full amount of their UIM coverage ($100,000).  After obtaining the $50,000 from State Farm, they reduced their demand to Allstate to $50,000, since they could recover only a maximum, from all sources, of the total amount of their own UIM coverage.  Allstate claims handlers asked for medical documentation, and the Loubiers' counsel sent letters and had phone conversations with these handlers.  Plaintiffs informed Allstate on March 3, 2007 that they had received the $50,000 from State Farm, demanded payment of $50,000 from Allstate, and threatened to sue for breach of contract and bad faith if payment was not

received by a certain date.  They spoke with a claims handler, who stated that Allstate would

pay the $50,000 upon receipt of Plaintiffs' "release," which she sent to them.  Allstate's form

release stated, in pertinent part, that as consideration for the $50,000 payment, the Loubiers

would "forever release[] and discharge[] Allstate from any and all liability and from any and

all contractual obligations whatsoever under the coverage" on their policy related to Mr.

Loubier's February 13, 2006 accident.  On April 23, 2007 Plaintiffs told Allstate that it had

no right in law or under the contract to demand such a release, asserted Clifford's negligence

in failing to offer them increased UIM coverage, and offered a receipt but not a release.  An

Allstate claims handler repeated the offer by letter on April 12, 2007—$50,000 in exchange

for a release—and in response to that letter, Plaintiffs demanded that Allstate cite law or the

contract provision authorizing them to require the release.  (Corr. Am. Compl. [Doc. # 31]

at ¶¶ 80–92.)  Plaintiffs filed suit on January 9, 2009.  According to Mr. Loubier, Allstate has

not paid Plaintiffs the $50,000 to which he is entitled, and Allstate knew that its failure to do

so would result in the Loubiers' accrual of extra-contractual damages.  (Corr. Am. Compl.

at ¶¶ 80–97; Proffered Receipt & Release, Ex. A to Allstate's Mem. Supp. [Doc. # 35], at 2.[2])

---

[2] Allstate requests, and Plaintiff does not oppose, that the Court consider the
Loubiers' auto insurance policy and Allstate's proffered release in considering the Rule
12(b)(6) motions.  The Court will do so.  The Corrected Amended Complaint describes the
effect of the proposed release and claims that Allstate breached the auto insurance policy,
"is replete with references to the contract[]" and proposed release, and therefore these
documents "are integral to the [Corrected] Amended Complaint." *Chambers v. Time
Warner, Inc.*, 282 F.3d 147, 153 & n.4 (2d Cir. 2002); *accord Global Network Commc'ns, Inc.
v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006); *Subaru Distribs. Corp. v. Subaru
of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

The Loubiers' auto insurance policy contains no provision addressing the insureds' obligation to execute a release of all claims against Allstate before Allstate will pay proceeds under the policy.

By way of (very lengthy) quotation of a complaint from another case as well as from a 2006 book called *From Good Hands to Boxing Gloves*, interspersed with their own allegations, Plaintiffs also allege that when Allstate tendered an initial public offering in 1992, it hired McKinsey, which, between 1992 and 1997, developed for Allstate and Liddy a Claims Core Process Redesign ("CCPR") that Allstate implemented in 1995 to help it reduce the amount of money it paid out for claims.  In consultation with McKinsey, former CEO Liddy also established a "60 percent rule" dictating that Allstate would pay no more than 60 percent of the value of any insured's valid claim and would fight the insured's attempt to collect more.  During this time, Allstate refused to implement the Connecticut Auto Insurance Reform Act, effective Jan. 1, 1994, which imposed a default level of UIM coverage equal to the insured's liability coverage, permitted the insured to increase or decrease the UIM coverage, and permitted insureds to buy "conversion" coverage under which an insured's maximum recovery was measured by the amount of coverage she obtained *plus* any other sources of proceeds, rather than offsetting the *total* coverage by other proceeds.  Allstate also began to incentivize claims handlers to reduce the amount that Allstate would pay out on claims ("claim severity"), which was the metric that the CCPR was

4

designed to reduce.  Because of these decisions and policies, Allstate's profit and "policy surplus" grew.  (Corr. Am. Compl. at ¶¶ 5–79.)

Plaintiffs allege that as fiduciaries Allstate and its agents had duties to implement "reasonable standards and procedures," to perform "adequate, reasonable, prompt, fair, honest and complete investigations and evaluations," "to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims," and not to request an overly broad waiver. Plaintiffs allege that Allstate has breached these duties and incentivized its agents to breach because of "Allstate's desire and plan to place its own interests ahead of those of its insureds."  Plaintiffs further allege that "Liddy and McKinsey knowingly and intentionally provided substantial aid, encouragement and assistance to Allstate to wrongfully deprive [P]laintiffs of the benefit of the policy" in knowing violation of these duties.  (*Id.* at ¶¶ 101–12.)  In their CUIPA claim Plaintiffs further allege that Allstate breached these duties "with such general and deliberate frequency as to constitute a general business practice."  (*Id.* at ¶ 114.)  In their negligence claim they allege that "Allstate and Clifford breached a duty to offer Under Insurance Motorist Conversion Coverage to [P]laintiff[s] and/or ensure they knowingly rejected it after being fully and fairly informed" about it.  (*Id.* at ¶ 120.)  In their fraud claim, they allege that Allstate and Clifford made fraudulent misrepresentations in Allstate's advertisements (policyholders "are in Good Hands™ with Allstate") as to the care and concern with which Allstate and its agents would treat its insureds' claims, since they knew these representations to be false and had in fact implemented a system to put Allstate's

5

needs first, including the 60 percent rule.  Plaintiffs allege that they relied on these misrepresentations and "felt secure in their belief, as supported by Allstate's and Clifford's express assurances, that they retained [the Loubiers'] interest at heart."  (*Id.* at ¶¶ 123–26.) In their interference with contractual and beneficial relationships claim, Plaintiffs allege that McKinsey's actions designing the CCPR interfered with their contractual relationships with Allstate established in their auto insurance policy.  (*Id.* at ¶ 129.)  In support of their CUTPA claim, Plaintiffs allege that the actions by Liddy, Allstate, Clifford, and McKinsey were wrongful, unreasonable, unfair, and deceptive.  (*Id.* at ¶ 132.)  Finally, in support of their RICO claim, Plaintiffs allege that Liddy, Allstate, and McKinsey conspired, by way of mail and wire fraud, to benefit from the unlawful activity of violating Conn. Gen. Stat. § 53a-119 (criminalization of obtaining property by false pretenses or promises).  (*Id.* at ¶¶ 138–39; Pls.' RICO Case Stmt. [Doc. # 29] at ¶ 2.)

## II.     Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting same).  Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 1949–50; *see also* Fed. R. Civ. P. 12(b)(6).

III.    Allstate's Motion to Dismiss and to Strike Certain Paragraphs [Doc. # 33]

Allstate moves to dismiss all claims brought against it except the breach of contract claim—that is, it seeks dismissal of six claims: for breach of covenant of good faith and fair dealing; CUIPA; negligence; fraud; CUTPA; and RICO.

A.    Breach of Covenant of Good Faith and Fair Dealing

In pertinent part, Plaintiffs allege that Allstate had "certain non-delegable duties with respect to the prompt investigation, evaluation and payment of Plaintiffs' first party claims." (2d Am. Compl. at ¶ 105.)  The essence of Plaintiffs' breach-of-covenant claim is that Allstate required them to submit a substantial amount of paperwork (including "a complete medical package relating to [Gervais Loubier's] neck surgery 5 years ago with his [workers' compensation] carrier" (Corr. Am. Compl. at ¶ 86 (quoting Allstate e-mail)), took ten months (May 4, 2006 to March 26, 2007) from the date of claim to offer to settle the claim (*see* 2d Am. Compl. at ¶ 91), and required them to sign a general release.

Allstate argues that there was no meaningful delay because it tendered an offer to settle the claim for the full policy limit of $50,000—the sum that Plaintiffs' counsel agreed was the maximum amount of recovery—only 23 days after receiving notice that Plaintiffs had gotten the $50,000 check from State Farm.  Under Connecticut law an insurer's "obligat[ion] to make payment to its insured up to the limits of the policy's UIM coverage" is triggered only when "the limits of liability under all bodily injury liability bonds or

insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements." Conn. Gen. Stat. § 38a-336(b).  The Connecticut Supreme Court has interpreted this statutory language to mean that "'exhaustion of the liability limits of the tortfeasor's policy is a necessary precondition to the recovery of underinsured motorist benefits.'"  *Coelho v. ITT Hartford*, 251 Conn. 106, 112 (1999) (quoting *Serrano v. Aetna Ins. Co.*, 233 Conn. 437, 452 (1995)).[3]  Allstate further asserts, and Plaintiffs do not contest, that CUIPA "provides for a 45-day period for payment of accident claims that are not in dispute" (Allstate's Mem. Supp. at 14 (citing Conn. Gen. Stat. § 38a-816(15)(A)), within which Allstate offered to pay Plaintiffs their maximum coverage ($50,000).  These allegations show no bad faith related to the timing of Allstate's response to the undisputed claim, and therefore Plaintiffs' claim that Allstate breached the covenant by untimely offering to settle must be dismissed.[4]

Allstate also argues that Plaintiffs fail to state a claim of breach of the covenant by failing "to offer [Plaintiffs] additional underinsured motorist coverage above the limits that they purchased," because it "has no legal duty to affirmatively offer such coverage."  (*Id.* at 12 (citing Corr. Am. Compl. ¶ 105(x)(4).)  The Connecticut Supreme Court's "case law

---

[3] In *Coelho* the Connecticut Supreme Court relied on this exhaustion rule to determine that because "accrual" of an insured's cause of action against his own insurer for underinsured motorist benefits "is dependent upon enforcement" of a judgment against the tortfeasor's insurer for the amount of the tortfeasor's coverage, "the time for commencing such an action [against an insured's own insurer for underinsured motorist coverage] begins to run on the date of exhaustion of the tortfeasor's liability limits."  251 Conn. at 112.

[4] At oral argument Plaintiffs' counsel argued that the offer's having been conditioned on execution of the general release means that the offer was not effective, and therefore Allstate has not paid the $50,000.  But this is a challenge to the propriety of Allstate's requiring a release, not the timeliness of its response to Plaintiffs' claim for benefits.

makes clear [that] no claim for breach of the duty of good faith and fair dealing will lie for conduct occurring prior to, or during, the formation of a contract," *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 638 (2002),[5] thus excluding the Allstate–Loubier negotiations of the insurance policy—including what underinsured motorist coverage it would provide Plaintiffs.

The Court does not conclude, however, that Plaintiffs have failed entirely to state a claim that Allstate breached the covenant. Allstate conditioned the payment of UIM benefits on a release of all other claims against Allstate or its agents imposing a condition precedent to payment that the policy does not provide for. Allstate has not shown any legal or contractual basis on which an insurer may condition payment of UIM benefits on a general release *not only* of "contractual obligations" but also "any and all liability," as Allstate's proffered release would. (*See* Proffered Receipt & Release at 2.) Therefore, Plaintiffs have stated a breach-of-covenant claim that by requiring Plaintiffs to execute the release after their counsel objected that such a condition was not permitted under the policy, Allstate has impeded Plaintiffs' right to receive the $50,000 UIM benefit, that is, Allstate has "imped[ed] . . . the plaintiff[s'] right to receive benefits that [they] reasonably expected to receive under

---

[5] At oral argument Plaintiffs also relied on a regulation promulgated under CUIPA, which provides that an auto insurance policy "*may* contain in substance . . . a provision requiring a claimant to benefits under medical payments or protection against uninsured and underinsured motorists coverage to submit to the insurer written proof of claim, and requiring the injured person to submit to physical examinations and to furnish medical reports and records." Conn. Agencies Regs. § 38a-334-8(b)(1)(C) (emphasis added). This regulation, which is addressed to the provisions of an auto insurance policy and is permissive rather than mandatory, cannot give rise to a breach-of-covenant claim because Allstate's compliance (or not) with the regulation would have occurred "prior to, or during, the formation of" the Loubiers' insurance policy. *See Macomber*, 261 Conn. at 638.

the contract." *See, e.g.*, *Keller v. Beckenstein*, 117 Conn. App. 550, 563 (2009) (quoting breach-of-covenant standard).

### B.   CUIPA

In the absence of any determination by the Connecticut Supreme Court or Connecticut Appellate Court regarding the existence of a private right of action under CUIPA, *see H & L Chevrolet, Inc. v. Berkley Ins. Co.*, 110 Conn. App. 428, 441 n.7 (2008) ("Whether CUIPA allows a private cause of action independent of CUTPA remains an open question."), this Court is bound to follow the Second Circuit's determination that "CUIPA does not provide a private cause of action," *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 119 (2d Cir. 2001).[6] Plaintiffs' claim under CUIPA against Allstate must therefore be dismissed.

### C.   Negligence

Allstate maintains that it (and Clifford, as its agent) owed Plaintiffs no "duty to offer Under Insured Motorist Conversion Coverage to [P]laintiff[s] and/or ensure that they knowingly rejected it after being fully and fairly informed thereupon." (Corr. Am. Compl. at ¶ 120.) Even assuming *arguendo* that such a duty exists, *cf.* Conn. Gen. Stat. § 38a-336(a)(2) (requiring insurer to obtain insureds' written request and informed consent forms for UIM coverage that is less than liability coverage), Plaintiffs' negligence claim against Allstate must nonetheless be dismissed because it is time-barred.  The timeliness of

---

[6] Plaintiff argues that a CUIPA claim lies under *Lees v. Middlesex Insurance Co.*, 229 Conn. 842, 848 (1994), and *American Lines, LLC v. CIC Insurance Co., A.V.V., S.A.*, Civ. No. 3:03cv1891(JCH), 2004 WL 2381717, *6 (D. Conn. Sept. 30, 2004), but each of these cases involved claims under CUTPA in which the unfair practices were practices that allegedly violated CUIPA.  These cases do not stand for the proposition that a private cause of action exists under CUIPA itself.

Plaintiffs' negligence claim is governed by Connecticut's general tort statute of limitations, Conn. Gen. Stat. § 52-577, which provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." The Connecticut Supreme Court has held that this statute does not tolerate "any construction . . . delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212 (1988) (citing *Prokolkin v. Gen. Motors Corp.*, 170 Conn. 289, 294–97 (1976)); *accord Piteo v. Gottier*, 112 Conn. App. 441, 445–46 (2009). As Plaintiffs' policy documents show, and as Plaintiffs agreed at oral argument, Plaintiffs' most recent policy renewal date prior to Mr. Loubier's accident with Mateo–Cruz—that is, the most recent date on which Allstate might have breached its duty—was on September 5, 2005, which is more than three years before Plaintiffs brought suit in state court on January 9, 2009. Plaintiffs' negligence claims are time-barred, and will therefore be dismissed.

D.    Fraud

Allstate challenges Plaintiffs' fraud claim under Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) applies to Connecticut common law fraud claims. *Olsen v. Pratt & Whitney Aircraft, a Div. of United Techs. Corp.*, 136 F.3d 273, 276 (2d Cir. 1998). To survive a motion to dismiss under Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)

(quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)).  "Allegations that are conclusory or unsupported by factual assertions are insufficient" to satisfy Rule 9(b). *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Plaintiffs allege that, "with knowledge of their falsity" or "with reckless disregard for their legality, truth or falsity, and without any present intention of honoring the commitments which those representations implied," Allstate and Clifford made certain fraudulent misrepresentations:

> Allstate and Clifford [made] a number of affirmative fraudulent representations . . ., including but not limited to expressly and impliedly representing to the [P]laintiffs on many occasions that they would protect their interests in said insurance if they entrusted them with it , which they did. This was supported by [A]llstate's selling its products with the slogan "You (its policy holders) are in Good Hands™ with Allstate." These representations were false when made in that the defendants had no intention of honoring their promises to the plaintiffs.

(Corr. Am. Compl. at ¶ 123 [*sic*].)

The Corrected Amended Complaint contains only one specific allegation: Allstate's advertising slogan that its policyholders "are in Good Hands™ with Allstate."  At oral argument Plaintiffs confirmed that this statement formed the basis of their fraud claim. Within the context of a Rule 9(b) analysis, this advertising slogan is vague and devoid of any meaning on which Plaintiffs could reasonably have relied, or that is susceptible of being proven false.  Therefore, any fraud claim premised on Allstate's "good hands" advertising slogan must be dismissed.  *See, e.g.*, *Gidley v. Allstate Ins. Co.*, Civil Action No. 09-3701, 2009 WL 4893567, *4 (E.D. Pa. Dec. 17, 2009) (dismissing fraud claim premised on "good hands" phrase because the phrase is "mere puffery [that] cannot establish a misrepresentation of a material fact" under Rule 9(b), and any deceptive-conduct claim premised on the phrase

12

must also be dismissed because no reliance on the phrase would be reasonable or justifiable); *Davis v. Allstate Ins. Co.*, Civil Action No. 07-4572, 2009 WL 122761, *6 (E.D. La. Jan. 15, 2009) ("'However persuasive, 'You're in good hands with Allstate' is nothing more than puffery,'" and fails to state a claim under the Louisiana Unfair Trade Practices Act (quoting *Rodio v. Smith*, 123 N.J. 345, 587 A.2d 621 (N.J. 1991))); *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1154 (S.D. Cal. 2001) (dismissing fraud claim against Allstate under Rule 9(b) because "Allstate's 'good hands' slogan lacks the meaningful specificity necessary to be considered a representation of fact"); *see also Rodio*, 123 N.J. at 352, 587 A.2d at 624 (affirming dismissal of common law fraud and Consumer Fraud Act claims based on "good hands" slogan because "Allstate's slogan is not a statement of fact, and therefore cannot rise to the level of common law fraud"); *Sadler v. State Farm Mut. Auto. Ins. Co.*, No. C07-995Z, 2007 WL 2778257, *3 (W.D. Wash. Sept. 20, 2007) (holding that State Farm's argument "ha[d] substantial merit" that under Rule 9(b), plaintiff had "not adequately pleaded" an intentional-misrepresentation claim because the insurer's "'like a good neighbor' slogan" was mere puffery and not an actionable representation under Rule 9(b); and dismissing claim); *DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 WL 2242605, *24 (S.D.N.Y. July 27, 2009) (dismissing common-law fraud claim under Rule 9(b) where claim was premised on, *inter alia*, banks' advertisements promising "a 'Special Relationship with Clients'" and "statements regarding customers' rights as investors and [banks'] codes of ethics" because the statements were nothing "more than an industry-wide set of maxims that were compiled by a trade group," and because statements and advertisements "did not contain facts or concrete promises of future performance that were specific to the relationship between the parties"); *Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904(RJS), 2009 WL 2356131, *36

13

(S.D.N.Y. July 27, 2009) (same); *Gold v. Univ. of Bridgeport School of Law*, 19 Conn. App. 379, 384–85 (1989) (law school dean's recruiting statement that "friendly interaction . . . existed between the students and the instructors" did not give rise to fraudulent-misrepresentation claim because it was "mere 'puffing,'" and "[s]uch 'favorable comments by sellers with respect to their products, are universally accepted and expected in the market place' and do not give rise to liability" (quoting *Web Press Servs. Corp. v. New London Motors, Inc.*, 205 Conn. 479, 483 (1987))); *Ormsby v. Nationwide Mut. Fire Ins. Co.*, No. CV 990429984, 2000 WL 739606, *7 (Conn. Super. Ct. May 25, 2000) (dismissing fraud claim based on insurer's slogans because "[o]rdinary persons would not consider 'Nationwide is on your side' or 'fast, fair and friendly service' as statements of fact.  Not only do the statements refer to future conduct, but they are subjective in nature.").

     E.     CUTPA

     CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  A plaintiff may bring a CUTPA claim premised on an insurer's violation of CUIPA.  *See, e.g.*, *Mead v. Burns*, 199 Conn. 651, 665–66 (1986).  Allstate moves to dismiss Plaintiffs' CUTPA claim, which is premised on violations of CUIPA, for failure to allege any CUIPA violation, failure to allege a general business practice, and failure to "allege substantial aggravating circumstances" accompanying its alleged breach of contract.

     Plaintiffs allege that even in undisputed claims—that is, "where liability has become reasonably clear"—Allstate abides by a "60% rule" under which it pays out only a fraction of the coverage due under its policies, and then fights insureds "tooth and nail" when they sue to claim more coverage.  Even if these practices could violate CUIPA, *see* Conn. Gen.

14

Stat. § 38a-816(6)(f), (g), Plaintiffs' allegations about Allstate's handling of their claim implicate none of these practices, since Allstate's first offer was the coverage limit ($50,000). Therefore, Plaintiffs have suffered no "ascertainable loss" because they were not subjected to the practice, and they have no standing to bring a CUTPA claim based on that practice. *See* Conn. Gen. Stat. § 42-110g (CUTPA action may be brought by "[a]ny person *who suffers any ascertainable loss* . . . as a result of the use or employment of a method, act or practice prohibited by" CUTPA (emphasis added)); *Serv. Road Corp. v. Quinn*, 241 Conn. 630, 638–39 (1997) (§ 42-110g's "ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action").

Plaintiffs' allegations regarding Allstate's handling of their claim also fail to state a claim under CUIPA, which prohibits an insurer from delaying payment by requesting substantially similar information multiple times, *see* Conn. Gen. Stat. § 38a-816(6)(*l*), because neither their allegations nor the text of the letters sent by counsel to Allstate reflect repeat requests for substantially the same information.  On May 4, 2006, when Plaintiffs made their first claim for UIM benefits from Allstate, counsel informed Clifford by letter that Mr. Loubier had obtained treatment, would undergo cervical disk surgery, with up to three months recuperation.  Three months later, Allstate requested "an up to date package of meds," Mr. Loubier's current treatment status, and "a complete medical package relating to his neck surgery 5 years ago with his [workers' compensation] carrier."  These requests are not for substantially the same medical information, and Plaintiffs do not allege any other requests by Allstate for medical or other information.  Therefore, even if Allstate had a general business practice of improperly requesting duplicate information, Plaintiffs did not

suffer any "ascertainable loss" because of that practice because they were not subjected to it, and they may not bring a CUTPA claim on this basis.

Nonetheless, the Court declines to dismiss Plaintiff's CUTPA claim totally. CUIPA prohibits Allstate from misrepresenting to Plaintiffs the terms of the auto insurance policy. *See* Conn. Gen. Stat. § 38a-816(1)(a), (6)(a). A fair reading of the Corrected Amended Complaint is that Plaintiffs also claim a violation of CUTPA based on Allstate's conditioning payment of owed UIM benefits on its insureds' execution of releases of all other claims against it (*see* 2d Am. Compl. at ¶ 105(x)),[7] which is deceitful because it implies that the "terms of [Plaintiffs'] insurance policy" requires them to sign the release, when in fact the policy contains no such requirement. Although Plaintiffs have not expressly alleged that Allstate imposes such condition on all of its UIM benefit payments or as a general business practice, the draft Receipt and Release sent by Allstate appears to be a boilerplate form applicable to UIM claims with blanks filled in to reflect the specifics of Mr. Loubier's accident and policy number, which the Court can infer was used by Allstate generally in paying UIM benefits. Plaintiffs' allegations that imposing this extra-contractual condition precedent on payment of UIM benefits deceives Allstate's insureds, including Plaintiffs, as to the terms and requirements of their auto insurance policies, does not lack facial plausbility as a CUTPA claim, and Allstate's motion to dismiss, as delimited, will be denied.

---

[7] Thus, the Court disagrees with Allstate that "the gravamen of [Plaintiffs'] complaint against Allstate is that Allstate failed to pay their underinsured motorist claim." (Allstate Mem. Supp. at 26.)

F.      RICO

Allstate argues that Plaintiffs' RICO claim does not satisfy Rule 9(b).  Plaintiffs claim that the predicate illegal act underpinning their RICO claim is fraud.  Rule 9(b) applies to RICO claims where, as here, "fraud is the predicate illegal act" underpinning that claim. *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999).  As explained above, the complaint contains no allegations of fraud sufficient to withstand Rule 9(b) scrutiny. Therefore, Plaintiffs' RICO claim must be dismissed.

G.      Request to Strike

Allstate also moves to strike certain paragraphs from the Corrected Amended Complaint.  Under Federal Rule of Civil Procedure 12(f), a court may

> strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored, but are within the district court's sound discretion.  Striking a pleading has been described as a "drastic remedy," and "[t]o prevail on a motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the [movant]."

*Lamoureux v. AnazaoHealth Corp.*, 250 F.R.D. 100, 102–03 (D. Conn. 2008) (citations omitted).  Allstate does not argue that permitting the certain paragraphs to remain in the operative complaint would prejudice it.  Having failed to argue or show that prejudice would result from inclusion of the paragraphs it seeks to strike, Allstate's motion will be denied.

H.      Summary

For the reasons stated above, Allstate's motion to dismiss will be denied as to Plaintiffs' claim that Allstate's imposition of a condition precedent to payment violates CUTPA and breached the covenant of good faith and fair dealing, and as to the request to

strike certain paragraphs from the Corrected Amended Complaint.  In all other respects Allstate's motion to dismiss will be granted.

IV.    Liddy's Motion to Dismiss [Doc. # 40]

Liddy "joins in the motion and memorandum of law filed by Allstate in support of its motion to dismiss" as it pertains to the claim brought against him.  (Liddy's Mot. Dismiss at 2.)  In the Corrected Amended Complaint Plaintiffs raised only one claim—under RICO—against Liddy.  For the reasons stated above, the RICO claim against Liddy will be dismissed under Rule 9(b).[8]

V.    Clifford's Motion to Dismiss [Doc. # 32]

Plaintiffs assert three claims against Clifford: negligence, fraud, and CUTPA.  As analyzed above, Plaintiffs' negligence claim against Clifford is time-barred under § 52-577 and Plaintiffs' fraud claim against Clifford fails under Rule 9(b).  Since Plaintiffs do not allege that Clifford misrepresented the terms of any insurance policies to them or demanded that they execute the release and waiver—which is the conduct that gives rise to the surviving CUTPA theory—Clifford's motion to dismiss the CUTPA claim will be granted.  In addition, any CUTPA claim against Clifford is time-barred, since Clifford's most recent conduct toward Plaintiffs is alleged to have occurred September 5, 2005, more than three years before Plaintiffs filed suit.  *See* Conn. Gen. Stat. § 42-110g(f).  For these reasons, Clifford's motion to dismiss will be granted.

---

[8] In their Second Amended Complaint Plaintiffs name Liddy as a defendant in two additional counts: for fraud, and under CUTPA.  Below, the Court addresses Liddy and Allstate's motion to strike the Second Amended Complaint, including its naming Liddy as a defendant in these two counts.

VI.     McKinsey's Motion to Dismiss [Doc. # 34]

Plaintiffs assert three claims against McKinsey: interference with contractual and beneficial relationship; CUTPA; and RICO.  Since Plaintiffs allege that McKinsey's involvement with Allstate ended in 1997, twelve years before Plaintiffs filed suit, the CUTPA claim must be dismissed as time-barred.  Plaintiffs also have not alleged that McKinsey was in any way involved in Allstate's imposition of a condition precedent to payment of Plaintiffs' claims.  The RICO claim must also be dismissed as insufficient under Rule 9(b).

As to the interference claim, Plaintiffs allege that McKinsey assisted Allstate and Liddy between 1992 and 1997 by designing the CCPR.  Plaintiffs obtained auto insurance from Allstate in 2000 and they base their claim on conduct that took place in and after 2006.  Not only is this claim time-barred under Conn. Gen. Stat. § 52-577, *see Rossman v. Morasco*, 115 Conn. App. 234, 254 (2009) (applying § 52-577 to claim of tortious interference with contractual  relations), but the Corrected Amended Complaint does not support any reasonable inference or conclusion that McKinsey knew of Plaintiffs' contractual relationship with Allstate.  Plaintiffs also allege no facts regarding any McKinsey conduct vis-à-vis Plaintiffs, let alone interference with the contractual relationship.  There is also no plausible inference to be made that Plaintiffs suffered any "loss" by McKinsey's conduct, since Plaintiffs do not allege McKinsey's involvement in any manner in Allstate's determination to impose the condition precedent on its insureds generally, or on Plaintiffs specifically.  *See Rioux v. Barry*, 283 Conn. 338, 351 (2007) ("[a] claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was

tortious; and (5) a loss suffered by the plaintiff that was cause by the defendant's tortious conduct.").

For these reasons, McKinsey's motion to dismiss will be granted.

VII.   Allstate and Liddy's Motion to Dismiss and to Strike

Allstate and Liddy move to strike the Second Amended Complaint as having been filed without leave of the Court.  In the alternative, they move to dismiss the complaint on the same grounds as their motions to dismiss the First Amended Complaint.  There are four differences between the First and Second Amended Complaints: *first*, Plaintiffs added an allegation against Liddy in the RICO cause of action; *second*, in the fraud cause of action, Plaintiffs included an allegation against Liddy regarding his "60% rule"; *third*, Plaintiffs name Liddy as a defendant in the CUTPA claim; and *fourth*, Plaintiffs attached to the complaint a list of cases against Allstate involving contract disputes that had been referenced in but omitted from the Corrected Amended Complaint.

Plaintiffs argue that under Federal Rule of Civil Procedure 15(a) they had an absolute right to amend their complaint without leave of the Court because Defendants' motions to dismiss did not constitute "responsive pleading[s]."  Although Plaintiffs are correct that the motions to dismiss were not "responsive pleading[s]" within the meaning of the rule then in effect,[9] *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 242 (2d Cir. 2007) ("Defendants' motion to dismiss, because it was a motion, not a pleading, was not a 'responsive pleading' within the meaning of Rule 15(a)."), the rule only gave a party a right

---

[9] Effective December 2009, amended Rule 15(a)(1)(B) now refers to "a responsive pleading or . . . a motion under Rule 12(b), (e), or (f), whichever is earlier."  The discussion in the text applies the now-outdated version of Rule 15.

"as a matter of course" to amend its pleading "once," *see* Fed. R. Civ. P. 15(a)(1) (since amended). The Second Amended Complaint is Plaintiffs' *third* amendment to its complaint. They filed their complaint in state court; then they filed what they styled an "Amended Complaint" on May 7, 2009 [Doc # 30]; later that day they filed what they styled a "Corrected Amended Complaint" [Doc. # 31]; almost two months later, on July 1, 2009, they filed the Second Amended Complaint [Doc. # 42]. As the Second Amended Complaint is not Plaintiffs' *first* amendment to the pleading, they did not have the right "as a matter of course" to file it.

In the alternative, Plaintiffs ask for leave, *nunc pro tunc*, to file the Second Amended Complaint. Both the outdated and now-current versions of the rule hold that "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but "where amendment would be futile, denial of leave to amend is proper," *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006).

In this case, the differences between the Corrected Amended Complaint and the Second Amended Complaint pertain to claims that would, even as amended, be dismissed under Rules 12(b)(6) or 9(b). The fraud and RICO claims amendments do not point to more than the mere puffery that is insufficient under Rule 9(b), and therefore any amendment to add Liddy and McKinsey to those claims would be futile.[10] The amendment to the surviving CUTPA claim does not show or support an inference of Liddy's involvement

---

[10] In the amendments Plaintiff reference, in support of the fraud claim against Liddy, their allegations "in Paragraphs 10–78." (2d Am. Compl. at ¶ 123b.) These allegations recount Allstate's and Liddy's attempts, after Allstate's 1992 IPO, to reduce "claim severity" and increase policy surplus by paying less per valid claim, implementing the CCPR, installing and using the Colossus computer system, and reducing attorney representation rates. But they do not set forth any statements or representations made by Allstate, Liddy, or Clifford.

in the conduct, only Liddy's development of the 60 percent rule, which, as discussed above, did not result in any "ascertainable loss" by Plaintiffs.  Finally, Plaintiffs' three-page list of state-court cases brought against Allstate contains no description of the facts or claims raised in those cases, and provides no ground on which to infer any general business practice by Allstate, or otherwise to support any CUTPA claim.  In denying Allstate's motion to dismiss the CUTPA claim based on the condition precedent, the Court relied on the boilerplate nature of the proffered release, not on claims, facts, or opinions from other cases. Amendment to add this list would be futile.

Because Plaintiffs did not have the right to amend their complaint as a matter of course, and because amendment would be futile, the Court denies Plaintiffs leave, *nunc pro tunc*, to file the Second Amended Complaint.  Thus, the operative complaint is the Corrected Amended Complaint [Doc. # 31].

VIII.   Conclusion

For the reasons stated above, Sean Clifford's Motion to Dismiss [Doc. # 32] is GRANTED; Allstate's Motion to Dismiss and to Strike [Doc. # 33] is GRANTED IN PART and DENIED IN PART; McKinsey's Motion to Dismiss [Doc. # 34] is GRANTED; Liddy's Motion to Dismiss [Doc. # 40] is GRANTED; and Allstate and Liddy's Motion to Strike the Second Amended Complaint [Doc. # 47] is GRANTED.

Plaintiffs and Allstate, the only remaining defendant, shall immediately commence discovery on Plaintiff's claims of breach of contract, breach of the covenant of good faith and fair dealing, and CUTPA violation consistent with this Ruling.  The parties' Rule 26(f) Planning Report shall be filed by April 7, 2010.  (*See* Scheduling Order [Doc. # 27].)

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of March, 2010.